UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ONA C. ALLEN,

           Plaintiff,

    v.

NORTHWEST PERMANENTE, P.C., an Oregon corporation,

           Defendant.

Case No. 3:12-cv-0402 -ST

FINDINGS AND RECOMMENDATION

STEWART, Magistrate Judge:

## INTRODUCTION

Plaintiff, Ona C. Allen ("Allen"), is a Nurse Practitioner who was employed by Kaiser Foundation Health Plan of the Northwest ("Health Plan"). Amended Complaint, p. 1. The terms and conditions of her employment were controlled by the collective bargaining agreement ("CBA") between Health Plan and her union, the Oregon Federation of Nurses and Health Professionals ("OFNHP"). *Id.* Defendant, Northwest Permanente ("NWP"), has a contract with the Health Plan to recommend and monitor the credentialing of healthcare professionals employed by the Health Plan. *Id*, p. 2. That contractual function is performed by NWP's Credential's Committee. *Id.* On October 23, 2008, NWP's Credentials Committee refused to renew Allen's application for credentials which prohibited her from treating Health Plan patients.

1 - FINDINGS AND RECOMMENDATION

*Id, ¶* 2.24. After Health Plan terminated her employment, OFNHP filed a grievance under the CBA on Allen's behalf against Health Plan. *Id*. The arbitrator ruled that "NWP had significantly and inappropriately influenced Health Plan's termination of Allen," but "was not empowered to award any damages or enforce its ruling." *Id.*

On February 7, 2012, Allen filed an Amended Complaint in Multnomah County Circuit Court for the State of Oregon, Case No. 1112-17048, against NWP alleging that it used the forum of its Credentials Committee to cause her discharge from Health Plan by refusing to renew her application for re-credentialing and, as a result, prohibited her from treating patients and earning a salary. *Id*, p. 2. She alleges five claims for relief: Intentional Interference with Economic Relations (First Claim), Defamation (Second Claim), Breach of Contract (Third Claim), Breach of Duty of Good Faith (Fourth Claim), and Equitable Relief (Fifth Claim). As a result, she seeks to recover punitive damages, economic damages, non-economic damages for physical, emotional, and mental stress and injury to her personal and professional reputation, and an award of reasonable attorney fees.

On March 12, 2012, NWP removed the case to this court pursuant to 28 USC §§ 1441 and 1446, asserting original jurisdiction under 28 USC § 1331. Notice of Removal, ¶ 3. NWP argues that most of Allen's claims[1] arise out of the CBA between OFNHP and her employer, the Health Plan, and, therefore, are preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 USC § 185.[2] Allen moves to remand this case back to state court (docket # 5). For the reasons set forth below, the motion to remand should be DENIED.

---

[1] NWP conceded at oral argument that Allen's defamation claim is not preempted.

[2] Section 301(a) of the LMRA provides as follows: "Suits for violation of contracts between an employer and a labor organization representing employees . . . may be brought in any district court of the United States having

2 - FINDINGS AND RECOMMENDATION

## STANDARDS

Subject to strict time constraints, defendants in a state court action may remove that action to federal court when the case could have originally been brought in federal court. 28 USC §§ 1441, 1446(b). Removability is "to be determined according to the plaintiffs' pleading at the time of the petition or removal." *Pullman Co. v. Jenkins*, 305 US 534, 537-38 (1939).

Courts strictly construe the removal statute against removal jurisdiction, "and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F3d 1241, 1244 (9th Cir 2009), citing *Gaus v. Miles, Inc.*, 980 F2d 564, 566 (9th Cir 1992) (*per curiam*). "The presumption against removal means that 'the defendant always has the burden of establishing that removal is proper.'" *Id*, quoting *Gaus*, 980 F2d at 566; *see also Durham v. Lockheed Martin Corp.*, 445 F3d 1247, 1252 (9th Cir 2006).

## FINDINGS

Allen argues that NWP improperly removed this case from state court because her claims do not arise under or require the interpretation of the CBA and, thus, are not preempted by § 301 of the LMRA. As the Ninth Circuit has explained:

> If the plaintiff's claim cannot be resolved without interpreting the applicable CBA . . . it is preempted. Alternatively, if the claim may be litigated without reference to the rights and duties established in a CBA . . . it is not preempted. The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.

---

jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 USC § 185(a).

3 - FINDINGS AND RECOMMENDATION

*Cramer v. Consolidated Freightways, Inc.*, 255 F3d 683, 691 (9th Cir 2001), *cert denied*, 534 US 1078 (2002) (citations omitted).

Although Allen's employment with Health Plan was controlled by the CBA, she contends that her claims against NWP are not preempted for the simple reason that NWP is not a party to the CBA. She also asserts that none of her claims require interpretation of the CBA or substantially depend on an analysis of the CBA, but instead only involve wrongful conduct by NWP's Credentials Committee which took place completely outside the CBA. Although Allen may not be suing a party to the CBA,[3] this court finds that most of her claims substantially depend on an analysis of the CBA and, thus, are preempted.

First, Allen's allegations are similar to those in *Newberry v. Pacific Racing Ass'n*, 854 F2d 1142 (9th Cir 1988). In *Newberry*, a former race track employee, who was terminated for alleged misappropriation of track funds, sued two racing associations and their general manager for breach of an implied covenant of good faith and fair dealing and other common law claims. She filed a grievance under the CBA between the racing associations and her union which proceeded to arbitration. The arbitrator determined that defendants did not have just cause to discharge Newberry and ordered her reinstatement but without back pay. Newberry did not appeal the arbitrator's decision and instead filed suit in state court which defendants removed to federal court and then filed a successful motion for summary judgment. The issue on appeal was whether the claim for breach of an implied covenant of good faith and fair dealing was preempted by § 301 of the LMRA and, thus, removable to federal court. The Ninth Circuit began its analysis by recognizing that § 301:

---

[3] NWP submits that it and OFNHP signed a National Agreement which is an addendum to and, in the event of a conflict, supersedes the CBA. Kitchel Decl., ¶ 3 & Ex. 1. However, as NWP acknowledged at oral argument, the National Agreement contains no terms that require analysis with respect to the issues presented by Allen.

4 - FINDINGS AND RECOMMENDATION

> does not preempt every employment dispute tangentially involving the labor agreement, and will proceed to analyze [Newberry's] contentions under the Supreme Court's twin tests . . .: Does the application of state law "require[] the interpretation of a collective bargaining agreement" or "substantially depend[] upon analysis of the terms of an agreement made between the parties in a labor contract?"

*Id* at 1147 (citations omitted).

The court concluded that Newberry's implied covenant claim was preempted under both tests. The complaint contained "several references to the labor contract that governed 'the conditions of her employment,'" including promises not to "act arbitrarily in dealing with Plaintiff." *Id*. After her termination, plaintiff "relied on the labor agreement for redress" by bringing a "grievance under the contract" wherein "an arbitrator subsequently ordered the employer to reinstate her." *Id*. The court concluded that plaintiff's claims were preempted under § 301 because they required interpretation of the CBA that was the subject of her earlier grievance and noted, "[a]lthough Newberry's argument is formally valid under principles of logic, it cannot avail her here because of a critical fact: the nature of her employment contract with the racing associations." *Id* at 1148.

Unlike *Newberry*, Allen is not suing her employer, Health Plan. However, as in *Newberry*, the CBA's relevance to most of her claims is evidenced by her own allegations. Allen alleges that Health Plan delegated to NWP the obligation to recommend and monitor credentialing of Health Plan employees. Amended Complaint, pp. 1-2. By refusing to renew her credentials, Allen alleges that NWP's Credentials Committee caused her discharge from Health Plan. *Id*. In addition, Allen alleges that she was "an aggressive and successful representative of her union," contributing to "the defeat of NWP's efforts to reduce positions for Health Plan employees who worked as 'affiliated clinicians' and were OFNHP members like Allen." *Id*, ¶ 2.2. She further alleged that she filed grievances with OFNHP in 2006 and 2008 for

5 - FINDINGS AND RECOMMENDATION

employment disputes with Health Plan which are "relevant to this action." *Id*, ¶¶ 2.6, 2.7. She alleges violations of the CBA that occurred on several occasions: when NWP evaluated her work performance in March 2008, when her supervisor contacted her while on vacation in September 2008, and when her work assignment was changed allowing NWP to control her employment. *Id*, ¶¶ 2.10, 2.20, 2.21. After her discharge from employment in October 2008 based on the nonrenewal of her credentials, she filed another grievance which proceeded to arbitration. *Id*, ¶ 2.24.

Allen attempts to minimize these allegations as merely providing background information. However, each of those allegations is incorporated into each of her claims. And her claims are premised on the conduct of NWP's Credentials Committee which caused her discharge in October 2008, which she, in turn, contested through the CBA's grievance procedures. The credentialing process that Health Plan delegated to NWP was a component of her employment subject to the CBA. Therefore, the NWP's actions were not wholly outside the CBA, but were part and parcel of the CBA.

For example, the First Claim alleges that "NWP intentionally interfered with Allen's employment relationship with Health Plan for improper purposes and/or improper means when it caused the discharge of Allen on or about October 2008." *Id*, ¶ 3.2. If Allen had not been discharged, then she would have no cause to complain about the conduct of NWP's Credentials Committee. Therefore, she not only must prove the wrongful conduct by NWP's Credentials Committee, but, to obtain any redress, she also must prove that her termination based on that conduct was wrongful. Whether her termination was wrongful necessarily depends on an analysis of the CBA. Conceivably Allen may have a claim against NWP that is unrelated to her termination, for example, injury to her professional reputation by the refusal to renew her

credentials as alleged in the Second Claim for defamation.  However, when her injury arises from her termination from employment, as alleged in the other claims, she cannot escape the fact that her termination from employment by Health Plan was governed by the CBA.

Second, Allen's grievance underlies how closely her claims are intertwined with the CBA.  NWP has supplemented the record with exhibits concerning Allen's arbitration of her October 2008 discharge.  Kitchel Decl., Exs. 2-5.  In determining whether removal was proper for purposes of federal question jurisdiction, the court must determine that a federal question "is presented on the face of the plaintiff's properly pleaded complaint."  *Rivet v. Regions Bank of La.*, 522 US 470, 475 (1998) (internal quotation marks and citation omitted).  However, artful pleading cannot be used to avoid removal where, for example, a plaintiff asserts a state-law claim that is completely preempted by federal law, such as by § 301.  *Id* at 475-76.  Here the pleadings explicitly refer to the prior arbitration and the arbitrator's decision.  Amended Complaint, ¶ 2.24.  Therefore, it is proper for the court to consider those additional undisputed facts.  *Cf Branch v. Tunnell*, 14 F3d 449, 453-54 (9th Cir), *overruled on other grounds by Galbraith v. County of Santa Clara*, 307 F3d 1119 (9th Cir 2002) (on a FRCP 12(b)(6) motion to dismiss, the court may consider a document outside the complaint when the "complaint specifically refers to the document and . . . its authenticity is not questioned").

At the arbitration hearing, the parties stipulated that the grievance included "an appeal of the Credentials Committee's adverse recommendation" to deny Allen's application to renew her credentials.  Kitchel Decl., Ex. 4 ("Opinion of Arbitrator"), p. 2.  The issues presented were "[w]hether the October 2008 personnel actions involving [Allen], including the termination of her credentials were for just cause" and "[i]f not, what shall be the remedy?"  *Id,* p. 3.  OFNHP, on Allen's behalf, argued that the termination of her credentials was without just cause, but was

7 - FINDINGS AND RECOMMENDATION

due to her "vociferous union advocacy." *Id*, Ex. 2 ("OFNHP's Pre-Hearing Brief"). That is the same contention made by Allen in this case. OFNHP also asked the arbitrator to vacate the Credentials Committee's decision and reinstate Allen to her former position.

After several days of testimony and extensive briefing, the arbitrator found in Allen's favor. He concluded that: (1) she was "effectively or constructively discharged" by "the adverse action by the Credentials Committee;" (2) her discharge "must be reviewed, to some degree, under the just cause standard" in the CBA; and (3) the Credentials Committee failed to follow proper procedures under the CBA. Opinion of Arbitrator, pp. 16-18. Accordingly, he vacated the termination of her credentials, placed her on paid administrative leave for 60 days, remanded her "application for recredentialing for further proceedings," and ordered her reinstatement "in the event that her application for recredentialing is approved." *Id* at 19-20. OFHNP subsequently asked that the arbitrator to award back pay to Allen which the arbitrator denied. Kitchel Decl., Ex. 5. After conducting further proceedings as ordered by the arbitrator the Credentials Committee recommended that Health Plan deny Allen's application for re-credentialing. *Id*, ¶ 8. Allen did not appeal that recommendation or the subsequent termination of her employment which apparently occurred in 2011. *Id.*

This lawsuit alleges that Allen suffered injury solely as a result of her October 2008 termination. However, that termination was vacated by the arbitrator, albeit without any award of damages. Allen is not seeking damages as a result of her post-remand termination in 2011. Since her grievance resulted in her reinstatement, this lawsuit appears to be a backdoor attempt to recover the back wages denied by the arbitrator between her October 2008 wrongful termination and her 2011 termination. From that standpoint, her claims were fully and finally addressed and resolved at the binding arbitration. Because the court must necessarily review and

8 - FINDINGS AND RECOMMENDATION

interpret the CBA and related proceedings to address legal and factual issues regarding Allen's claims and NWP's defenses, they are clearly preempted.

Aside from the issue of her alleged injury, Allen faces the insurmountable obstacle of taking the opposite position now than she took in the arbitration. When pursuing her grievance against Health Plan, OFNHP repeatedly took the position that both the Credentials Committee and NWP were bound by the CBA. OFNHP's Pre-Hearing Brief, pp. 4 ("As a result of Kitchel's admission that the Committee is an agent of the Health Plan, the denial of credentials can no longer be characterized as outside the reach of the [CBA]."), 4 n8 ("Assuming *arguendo* that the Credentials Committee was independent of the Health Plan, the denial of credentials remains actionable given the Health Plan's tainting of the review process and/or the Committee's adoption of the [CBA]"), 8 ("The credentials process, especially as administered here, involves a quintessential personnel action that [is] subject to just cause" review under the CBA); Ex. 3 ("OFNHP's Post-Hearing Brief"), pp. 2 ("Assuming the Committee . . . had legitimate 'concerns' about Allen's performance, the only appropriate step for [Health Plan] and the Committee was to adhere to contractual Corrective Action" under the CBA), 65 ("NWP . . . assumed the CBA" by participating in its negotiation and by signing it), 69 ("If credentials review is exempted from collective bargaining obligations, then OFNHP's professional unit members will lose basic protections of Partnership and the power to negotiate terms or conditions of employment . . . [Health Plan] and NWP will have no incentive to participate in good faith during corrective action process if credentials review is not subordinate to just cause" under the CBA), 70 ("The exemption of credentials review from collective bargaining also would enable [Health Plan] and NWP to unilaterally change terms and conditions of employment."). Those arguments were necessary for Allen to establish that the arbitrator had

9 - FINDINGS AND RECOMMENDATION

authority to review the Credentials Committee's recommendation and apply the CBA's just-cause provision to that adverse recommendation.

Now she is arguing that the conduct by the Credentials Committee was outside the scope of the CBA and instead is measured only by the contract between Health Plan and NWP, as well as NWP's policies and procedures. "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position. . ." *New Hampshire v. Maine*, 532 US 742, 749 (2001) (quotation omitted). This rule of judicial estoppel is designed "to protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Id* at 749-50 (citation and quotation omitted). In determining whether to apply judicial estoppel, the court must first determine if a party's later position is "clearly inconsistent" with its earlier position and "whether the party has succeeded in persuading a court to accept that party's earlier position." *Id* at 750. "A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id* at 751. The court may also consider other pertinent factors. *Id.*

All of those factors are present here. Contrary to her current position, Allen contended in her grievance that the adverse decision by the Credentials Committee was subject to the CBA. She was successful, causing the arbitrator to set aside that decision. She would gain an unfair advantage if she were allowed to relitigate her claims on a new and inconsistent theory. Thus, Allen is judicially estopped from asserting here, contrary to the position taken in her arbitration, that the adverse decision by NWP's Credentials Committee is unrelated to the CBA. *See*

10 - FINDINGS AND RECOMMENDATION

*Speroni S.P.A. v. Perceptron, Inc.*, 12 Fed App'x 355 (6th Cir 2001) (applying judicial estoppel to bar plaintiff from making argument contrary to the argument made in a prior arbitration).

According to Allen, NWP, not her employer, is the culpable party.  But Allen cannot escape the nature of Health Plan's agency relationship with NWP that resulted in her termination under the CBA as a result of the adverse decision by NWP's Credentials Committee.   Thus, her state law claims (with the exception of the Second Claim for defamation) are preempted by § 301 of the LMRA.

## RECOMMENDATION

For the reasons set forth above, Allen's Motion to Remand (docket # 5) should be DENIED.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due Monday, June 18, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED May 30, 2012.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

11 - FINDINGS AND RECOMMENDATION