UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

ONA C. ALLEN,

              Plaintiff,

    v.

NORTHWEST PERMANENTE, P.C., an
Oregon corporation,

              Defendant.

Case No. 3:12-cv-0402 -ST

OPINION AND ORDER

STEWART, Magistrate Judge:

**INTRODUCTION**

Plaintiff, Ona C. Allen ("Allen"), has filed a Motion for Reconsideration (docket #27) of the Findings and Recommendation issued May 30, 2012 ("F&R") (docket #20). No objections to the F&R were filed and on July 2, 2012, Judge Brown adopted the F&R as her own opinion (docket #22). For the reasons set forth below, reconsideration is denied, and this court adheres to its prior F&R.

**BACKGROUND**

Allen is a Nurse Practitioner who was employed by Kaiser Foundation Health Plan of the Northwest ("Health Plan"). The terms and conditions of her employment were controlled by the collective bargaining agreement ("CBA") between Health Plan and her union, the Oregon

1 – OPINION AND ORDER

Federation of Nurses and Health Professionals ("OFNHP"). Defendant, Northwest Permanente ("NWP"), has a contract with the Health Plan to recommend and monitor the credentialing of healthcare professionals employed by the Health Plan. That contractual function is performed by NWP's Credentials Committee.

On February 7, 2012, Allen filed an Amended Complaint in Multnomah County Circuit Court for the State of Oregon, Case No. 1112-17048, against NWP alleging that it used the forum of its Credentials Committee to cause her discharge from Health Plan by refusing to renew her application for re-credentialing and, as a result, prohibited her from treating patients and earning a salary. She alleged claims for Intentional Interference with Economic Relations, Defamation, Breach of Contract, Breach of Duty of Good Faith, and Equitable Relief, and sought to recover punitive damages, economic damages, and non-economic damages for physical, emotional, and mental stress and injury to her personal and professional reputation, as well as reasonable attorney fees.

On March 12, 2012, NWP removed the case to this court pursuant to 28 USC §§ 1441 and 1446, asserting original jurisdiction under 28 USC § 1331. On April 1, 2012, Allen filed a Motion to Remand. Pursuant to the F&R which Judge Brown adopted, that motion was denied because all of Allen's state law claims (except defamation) are preempted by § 301 of the Labor Management Relations Act ("LMRA"). Allen has since filed a Fourth Amended Complaint (docket #38) which includes claims only for Defamation and Equitable Relief.

## LEGAL STANDARD

The Federal Rules of Civil Procedure do not expressly recognize a motion for reconsideration. After entry of final judgment, courts construe motions to reconsideration "under either Federal Rule of Civil Procedure 59(e) (motion to alter or amend a judgment) or Rule 60(b)

(relief from judgment)," depending on when it is filed. *School Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F3d 1255, 1263 (9th Cir 1993), *cert denied*, 512 US 1236 (1994). If filed within 28 days after entry of judgment, it is treated as a motion to alter or amend the judgment under FRCP 59(e). *Herron v. Wells Fargo Fin., Inc.*, 2006 WL 3803398, at * 2 (D Or Dec. 22, 2006) (citations omitted). If filed more than 28 days, but less than one year after entry of judgment, it is considered a motion seeking relief from the judgment under FRCP 60(b). *Id.*

Allen contends that FRCP 60(b) is the proper mechanism for reconsideration based on newly discovered evidence. However, no judgment as yet been entered in this case. Therefore, FRCP 60 is not applicable.

However, prior to entry of a final judgment, a court my reconsider its own rulings, either *sua sponte* or upon motion by the parties. *Amarel v. Connell*, 102 F3d 1494, 1515 (9th Cir 1996) ("The interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment . . .") (quotation and citation omitted). *See also City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F3d 882, 885 (9th Cir 2001) ("As long as a district court has jurisdiction over the case, then it possesses the inherent procedural power to reconsider, *rescind*, or modify an interlocutory order for cause seen by it to be sufficient.") (emphasis in original); FRCP 54(b) (prior to entry of a final judgment, the court may revise "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties"). Therefore, this court has the inherent authority to reconsider its F&R. In that regard, the grounds for granting reconsideration under FRCP 60 are helpful to the analysis.

///

///

3 – OPINION AND ORDER

## DISCUSSION

The F&R recommended denying Allen's Motion to Remand because the credentialing process was a component of her employment subject to the CBA, such that her state law claims are preempted by § 301 of the LMRA.  It also concluded that Allen is judicially estopped from asserting that the adverse decision by the Credentials Committee is unrelated to the CBA because she successfully advanced the opposite position during the arbitration of her grievance, namely that the CBA's grievance and just-cause provisions applied to the credentialing process.  Allen asks the court to revisit both of these conclusions in light of new evidence.  She contends that new evidence establishes that NWP's credentialing process is based on state and federal law, not on the CBA, and that the facts advanced by the parties during the arbitration cannot be attributed to Allen.

The new evidence consists of documents produced by OFNHP in response to a subpoena after issuance of the F&R.  Although Allen refers to 5,000 pages of newly produced documents, she relies on essentially three documents:  (1) an email dated November 11, 2009 (Fisher Decl. (docket #33), Ex. 1); (2) a complete copy of the 2008 Kaiser Permanente Credentialing & Recredentialing Policies and Procedures (*id*, Ex. 2); and (3) excerpts from the arbitration transcript (*id*, Exs. 3-5).  Allen also has submitted a copy of the arbitrator's Findings of Fact (*id*, Ex. 6) and Opinion (*id*, Ex. 7), but neither of those documents were produced in response to the subpoena and thus, are not new evidence.  *Id*, ¶¶ 6-7.  In fact, NWP previously submitted a copy of the arbitrator's written opinion in opposition to the Motion to Remand.  Kitchel Decl. (docket #12), Ex. 4.

NWP responds that Allen has not presented any new evidence, and even if she did, that evidence does not require the court to reconsider its previous conclusions regarding remand.

4 – OPINION AND ORDER

Additionally, NWP contends that Allen's request for reconsideration is untimely because she waited more than two months after the F&R was adopted.

At the time of oral argument on the Motion to Remand, Allen asked the court to allow her to conduct discovery of various documents. The court denied her request. After Judge Brown adopted the F&R, the court permitted Allen to subpoena OFNHP for records of the CBA arbitration. Because Allen did not have these documents until after denial of her Motion to Remand, this evidence can fairly be considered new evidence. Allen's Motion for Reconsideration is also timely, given the somewhat unique procedural course of this case. Because Allen did not have OFNHP's documents when Judge Brown reviewed the F&R, she was unable to make the arguments she is making now. Allen filed this motion within about two weeks after receiving the documents. Thus, she filed her motion in a timely manner. However, even after considering the new evidence, reconsideration of the F&R is not warranted.

First, Allen has failed to persuade this court to revisit its conclusion regarding judicial estoppel. This court previously concluded that Allen was judicially estopped from asserting that the adverse decision by NWP's Credentials Committee is unrelated to the CBA because she took a contrary position at the arbitration and would gain an "unfair advantage if she were allowed to relitigate her claims on a new and inconsistent theory." F&R, p. 10. In support of reconsideration, Allen relies on the newly produced transcript from the arbitration hearing. According to Allen, the transcript establishes that the attorney that appeared at the arbitration, Patrick Bryant ("Bryant"), represented only OFNHP, not her. Accordingly, she argues that the position advanced at the arbitration by Bryant that the Credentials Committee and NWP were bound by the CBA cannot be attributed to her. Fisher Decl., Exs. 3-4.

During resolution of the motion to remand, Allen did not directly address the issue of whether Bryant was actually representing her interests at the arbitration. However, Allen was present at the arbitration hearing to resolve her grievance. Fisher Decl., Ex. 5, p. 2. Therefore, she was aware, even without the production of the transcript, whether Bryant was making arguments that she did not intend to make. Consequently, her argument that Bryant was not advancing her interests is an argument that could have, and indeed should have, been raised earlier as an objection to the F&R.

In any event, Allen's argument lacks merit. She cites to *Peterson v. Kennedy*, 771 F2d 1244 (9th Cir 1985), *cert denied*, 475 US 1122 (1986), to support her argument that no attorney-client relationship existed between her and Bryant and that, as a result, she should not be bound by the arguments he made at the arbitration. However, *Peterson* did not address the situation presented here, namely whether an employee is bound by statements made by her union's attorney when handling her grievance. Instead, in *Peterson*, the Ninth Circuit extended LMRA § 301(b) immunity to attorneys in certain circumstances, explaining that "attorneys who perform services for and on behalf of a union may not be held liable in malpractice to individual grievants where the services the attorneys perform constitute a part of the collective bargaining process." *Id* at 1256. Essentially, *Peterson* held that than an attorney who performs services on behalf of a union, regardless of whether in-house or outside counsel, cannot be sued for malpractice by an individual grievant for services rendered as part of the CBA. *See Breda v. Scott*, 1 F3d 908, 909 (9th Cir 1993). In so finding, the court noted that an attorney acting on behalf of the union who represents a union member during the grievance process has not entered into "an attorney-client relationship in the ordinary sense with the particular union member who is asserting the underlying grievance. Although the attorney may well have certain ethical obligations to the

grievant, his principal client is the union[.]" *Peterson*, 771 F2d at 1258.  Here, Allen does not allege malpractice or otherwise contend that Bryant's services were otherwise deficient, thereby rendering the principles in *Peterson* largely inapplicable to the situation presented here.  The additional cases cited by the parties deal with a situation where a union member sues the union for breach of the duty of fair representation, which also is not the issue presented here.

While an individual union member's interests may sometimes diverge from the collective interests of the union when processing and resolving grievances, Allen makes no such argument.  Nor can she reasonably do so, as the grievance arbitration was resolved in her favor.   Allen also does not dispute that the arguments made at the arbitration were only for her benefit and pertained only to the processing of her individual grievance.  Allen has presented no cases supporting her claim that, under such circumstances, she should not be bound by statements made by Bryant during the arbitration proceedings.  As a benefit of union membership, unions may, as did OFNHP here, provide an attorney to assist union members in resolving grievances with their employers.  Where the outcome for the grievant is favorable, it would be illogical and unfair to allow the grievant to disavow the position advanced on her behalf during the grievance process merely on the basis that her attorney was retained by the union.  Such a result is particularly unappealing where, as here, a grievant seeks to change position in order to avoid jurisdiction in federal court.  Consequently, the court adheres to its earlier decision regarding the application of judicial estoppel.

Second, Allen asks the court to reexamine the relationship between NWP, Health Plan, and the CBA on the basis of a November 2009 email and the complete 2008 Kaiser Permanente Credentialing & Recredentialing Policies and Procedures, which were produced for the first time

in response to her subpoena.  Based on this evidence, she argues that, contrary to the F&R, the credentialing process was not an employment decision subject to the CBA.

Allen previously argued that even though her employment with Health Plan was controlled by the CBA, her claims against NWP were not preempted because NWP is not a party to the CBA and all of her claims involve wrongful conduct by NWP's Credentials Committee which took place completely outside the CBA.  This court disagreed and concluded that Allen's state law claims are preempted because the allegations in her complaint are premised on the conduct of NWP's Credentials Committee, which caused her discharge and which she contested through the CBA's grievance procedures.  F&R, p. 6.  In order to prevail on her claims, Allen must prove that NWP's Credentials Committee engaged in wrongful conduct and also that that her "termination based on that conduct was wrongful . . . [which] necessarily depends on an analysis of the CBA."  *Id*.  Allen now asserts that the new evidence establishes that NWP's Credentials Committee is governed by requirements set forth by state and federal law, and that the CBA has no role at all.

It is not at all clear how this argument differs from the one previously advanced by Allen. Indeed, she is simply recycling her prior argument that because the Credentials Committee had its own standards, as set forth in the 2008 Kaiser Permanente Credentialing & Recredentialing Policies and Procedures (which are now submitted in their entirety) and because these standards are not included in the CBA, then her claims are not preempted.  According to Allen, resolution of whether NWP, through its Credentials Committee, improperly applied its own standards when evaluating her credential application does not require interpretation of the CBA.  This is precisely the argument that the court previously considered and rejected.  The fact that the court now has the complete policies and procedures before it does not compel a different result.  If

8 – OPINION AND ORDER

anything, the complete policies, specifically Policy No. 26, reiterate that any appeal of an adverse recommendation from the Credentials Committee was required to be conducted pursuant to the grievance procedure in the CBA. Fisher Decl., Ex. 2, Policy No. 26.

Moreover, the email proffered by Allen states that her appeal of the Credentials Committee's recommendation was subject to the CBA at least in part, specifically, "the process described in Article 19 of the CBA." *Id*, Ex. 1, p. 1. Consequently, it does not support Allen's argument that NWP previously took the position that the CBA was not implicated at all. Instead, the email is better understood as an articulation of Health Plan's position[1] regarding the grievance which, it bears noting, the arbitrator rejected. The fairest reading of the email is that Health Plan believed that Allen was required to appeal the Credentials Committee's recommendation pursuant to the process described in Article 19 of the CBA, but that the recommendation itself was not an "employment decision" that involves the more substantive sections of the CBA, such as Article 12 pertaining to discipline, corrective action, and discharge. Thus, the provisions and protections included in Article 12 (for example, the "just cause" standard) do not apply to the recommendation from the Credentials Committee. Nothing in this email changes this court's earlier conclusion that credentialing is a requirement of Allen's employment, such that the NWP Credentialing Committee's actions are also subject to the CBA.

Third, Allen relies on the lack of evidence of any contractual or agency relationship between NWP and Health Plan. She appears to contend that, given the lack of any evidence of an agency relationship between Health Plan and NWP, this court reached an erroneous

---

[1] The email was written by NWP's current counsel, who was also counsel for Health Plan during the grievance process. The email was written in 2009, which was during the grievance process, to which NWP was not a party. Consequently, even though written by the same attorney who is now representing NWP, this is not enough to attribute the contents of the letter to NWP. Regardless of whether the email can be attributed to NWP or Health Plan, the email does not help Allen here.

9 – OPINION AND ORDER

conclusion.  Since NWP acted wholly independently of the Health Plan, Allen argues that it must

be held accountable for denying her credentials application, which then, in turn, resulted in her

discharge by Health Plan.  Allen made this same argument in connection with her Motion to

Remand.  The lack of documents establishing an agency or contractual relationship between

Health Plan and NWP is irrelevant and does not change the court's earlier conclusion.  Because

the credentialing process was a component of Allen's employment, NWP's actions were not

wholly outside the reach of the CBA.

Finally, Allen argues for the first time in her Reply that the F&R improperly considered

documents not referenced by the Complaint, namely OFNHP's pre-hearing and post-hearing

briefs from the arbitration, to find that Allen took inconsistent positions with regard to the

application of the CBA.  However, Allen should have objected either when the documents were

submitted by NWP initially in opposition to the Motion to Remand or by filing objections to the

F&R.  Therefore, this argument is rejected as untimely and not based on any new evidence.

Moreover, the authenticity of the documents at issue are not disputed and closely relate to the

arbitration and arbitrator's decision mentioned in the Complaint.

## **ORDER**

For the reasons set forth above, Allen's Motion for Reconsideration (docket #27) is

DENIED.

DATED November 30, 2012

_____
s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge

10 – OPINION AND ORDER